## THE AMERICA.

### BEACH et al. v. THE AMERICA.

#### (District Court, S. D. New York. February 15, 1894.)

SHIPPING—NONDELIVERY OF CARGO — BREAKAGE—PRODUCTION OF REMAINS OF PACKAGE—PERILS OF THE SEA—BILL OF LADING—EXCEPTIONS.

Though the ship does not produce the remains of casks alleged to have been broken by perils of the sea, the fact that the casks were actually received on board is a matter of proof, and the absence of such remains is not necessarily conclusive of bad faith on the part of the ship; and when the testimony is explicit that the casks were well stored, and that the ship encountered heavy weather, resulting in the destruction of a number of casks, a decree will be given for the ship under the exceptions of a bill of lading against insufficiency of package, breakage, leakage, and perils of the seas.

In Admiralty. Libel for nondelivery of cargo. Dismissed.

Goodrich, Deady & Goodrich, for libelants.
John Chetwood, for respondent.

BROWN, District Judge. The above libel was filed to recover for the nondelivery of two drums of vinegar, which, according to the bill of lading, were shipped on board the America at London in April, 1893, marked "B & S," and deliverable to libelants at this port. The ship arrived in this port on the 27th of April. She met heavy weather, and some 30 casks of various descriptions, partly containing dyestuffs, were found, on opening the cargo, to be more or less smashed, and the contents gone. No vinegar was found, and no staves or heads were produced by the respondent bearing the mark "B & S," as stated in the bill of lading. Two bundles of staves and one head were presented by the respondents to the libelants as being their casks. One of the libelants testified that they had been long accustomed to import similar casks, and that the bundles of staves shown them were not of the usual size and had no smell of vinegar. Two of the defendant's witnesses testified that they had some smell of vinegar. It appeared also that

some staves had been thrown overboard.    The bill of lading contained exceptions for "insufficiency of package, breakage, leakage, and perils of the seas."

I think the evidence of heavy weather, the testimony as to good stowage, and the breakage of a considerable number of casks, would be sufficient to exempt the defendants from liability under the above exceptions in the bill of lading, as caused through perils of the seas, and the breakage and leakage incident thereto, if it sufficiently appeared that the nondelivery of the vinegar was from those causes.    The libelants, however, contend that the nonproduction of any staves of the length of the usual drum, or of any staves bearing the marks recited in the bill of lading, should prevent the respondents from claiming this defense, as the casks might not have been actually shipped, or might have been removed.

It is undoubtedly the practice, in case of the loss of contents of packages by accident, to preserve the remains of the bags, cases or barrels, etc., and to produce them to the consignee as evidence of the carrier's good faith in the performance of his duty.    This is, however, a matter of evidence; and the absence of such remains is not necessarily conclusive of bad faith.    In proportion as the packages are valuable and easily purloined, the absence of all traces of their identity is the more suspicious; and the defendants should consequently be held to a more rigid account.    In the present case, the drums of vinegar were certainly not of that character. There is not the smallest probability that such drums, if put on board, were purloined; and the evidence of the mate is explicit that he saw these drums put on board and stowed in the vicinity of the barrels of dye stuffs, which were also broken.    There is nothing to contradict this, except the absence of any staves marked as recited in the bill of lading.    Though some of the staves produced were stained by the dye stuff, yet the marks on the vinegar drums were usually branded in; and if so, they were not likely to be obscured.    The staves thrown away might also have included the ones marked.

The testimony on the part of the libelants, both as respects the length of the staves, and the branding of the marks, was inferential only, viz., from the character and branding of the casks which the libelants had been previously accustomed to receive from the shippers on similar orders.    The libelants' inferences on both these points are, therefore, not at all certain, but liable to mistake, and do not amount to any positive evidence.    As the reasonable result of the evidence, I must, therefore, find that the vinegar was shipped on board, and was lost on the passage through the breakage of the casks, caused by perils of the seas.

The libel is, therefore, dismissed; but as the staves were not all preserved as they should have been for the proper satisfaction of consignees as to the identity of their casks, the dismissal must be without costs.